**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brenda Biebrich, et al., | No. CV-18-01227-PHX-JAT |
| Plaintiffs, | **ORDER** |
| v. | |
| Colleen O'Donnell-Smith, et al., | |
| Defendants. | |

Pending before the Court is Defendants Colleen O'Donnell-Smith, Jennifer Hunter, Sharon Herndon, and Rebekah Scott's (individually and collectively, "Defendants") Motion to Dismiss (Doc. 15) filed on June 8, 2018. Plaintiffs Brenda Biebrich ("Plaintiff Biebrich") and Heidi Davis ("Plaintiff Davis") (collectively "Plaintiffs") filed a timely Response (Doc. 17) on June 22, 2018 and Defendants filed a Reply (Doc. 18) on June 29, 2018. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1367. The Court now rules on the motion.

**I.    BACKGROUND**

Plaintiffs filed suit on April 20, 2018, alleging that Defendants unlawfully retaliated against them in a Superior Court of Arizona in Maricopa County ("Superior Court") proceeding by filing an emergency motion seeking sanctions for the release of confidential information to the media. (Doc. 1). Here, the operative complaint ("Compl.," Doc. 7) asserts the following causes of actions: (1) deprivation of First Amendment rights in violation of 42 U.S.C. § 1983; (2) wrongful institution of civil proceedings; and (3)

abuse of process. (*See generally* Compl.). The first cause of action is brought by Plaintiffs against all Defendants. (*Id.* ¶¶ 68–78). The remaining two causes of action are brought only by Plaintiff Biebrich against all Defendants. (*Id.* ¶¶ 79–89).

### A. Facts

The following facts are either undisputed or recounted in the light most favorable to the non-moving party. *See Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). Plaintiffs were involved in a civil adoption matter related to Plaintiff Biebrich's nephew. (Compl. ¶¶ 9–52). Plaintiff Davis represented Plaintiff Biebrich in that proceeding. (*Id.* ¶ 27). At all relevant times, Defendants Herndon and Scott were Arizona Department of Child Safety ("DCS") employees and Defendants O'Donnell-Smith and Hunter were Assistant Attorneys General representing DCS. (*Id.* ¶¶ 3–6). All Defendants worked in concert on this matter. (*Id.* ¶¶ 55–57).

Plaintiff Davis shared information with the media regarding the DCS's handling of the adoption proceeding. (*Id.* ¶¶ 40–42). After learning that the information had been shared, Defendants filed a motion seeking sanctions against both Plaintiffs for alleged violations of Arizona Revised Statutes §§ 8-542 and 8-807. (*Id.* ¶ 58). Arizona Revised Statute § 8-542 establishes that a person commits a class two misdemeanor by disclosing information related to Article 5 (Termination of Parent-Child Relationship) proceedings. Ariz. Rev. Stat. Ann. § 8-542. Arizona Revised Statute § 8-807 explains that a person who discloses "DCS information" without authorization by law or a court order similarly commits a class two misdemeanor. Ariz. Rev. Stat. Ann. § 8-807(U), (X). In their motion for sanctions, Defendants alleged that Plaintiffs disclosed information related to an adoption proceeding to the media. (Doc. 15). Plaintiffs allege that Defendants sought sanctions as retaliation against Plaintiffs for speaking with the media. (Compl. ¶ 53).

The Superior Court held evidentiary hearings in relation to these allegations on March 14, 2017 and April 6, 2017. (Doc. 18-1 at 3). The Superior Court issued a decision on April 20, 2017, finding that Plaintiff Biebrich did not make the alleged disclosures and holding that Plaintiff Davis's disclosures were not made in violation of the applicable

statutes. (*Id*. at 3, 7). In its reasoning, the Superior Court, however, expressed that it was "extremely troubled by [Plaintiff Davis's] lack of candor during her sworn testimony" and believed that Plaintiff Davis "may have violated [Arizona's] Rules of Professional Conduct." (*Id.* at 7). Ultimately, the Superior Court referred Plaintiff Davis's conduct issues to the State Bar of Arizona for further action by that organization. (*Id.*). The Superior Court took no further action in this matter. (*Id.*).

## II. MOTION TO DISMISS

Defendants filed the pending Motion to Dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Defendants move to dismiss all three of Plaintiffs' claims on the grounds that Defendants are entitled to absolute immunity. In the alternative, Defendants allege that Plaintiff Biebrich's abuse of process claim is barred by the applicable statute of limitations.

### A. Absolute Immunity

#### 1. Legal Standard

The determination as to whether a prosecutor is entitled to absolute, or only qualified, immunity on a state law or § 1983 claim depends on a functional analysis. *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993); *State v. Superior Court in and for County of Maricopa*, 921 P.2d 697, 700 (Ariz. Ct. App. 1996). In considering whether a prosecutor is protected by absolute immunity, the examining court "must disregard the intent, motive, or state of mind that the prosecutor had when performing the activity in question." *State v. Superior Court*, 921 P.2d at 700 (citing *Ashelman v. Pope*, 793 F.2d 1072, 1077–78 (9th Cir. 1986)). Prosecutorial immunity is not limited to individuals acting as criminal prosecutors; courts routinely hold that absolute prosecutorial immunity applies to actors outside of the position of prosecutor, and to individuals who are not attorneys. *See, e.g.*, *Meyers v. Contra Costa Cty. Dep't of Soc. Servs.*, 812 F.2d 1154, 1156 (9th Cir. 1987) (holding that a social worker was entitled to absolute prosecutorial immunity for his role in the initiation of dependency proceedings); *Gonzales v. Schutt*,

No. 1:14-CV-01347-CL, 2015 WL 4545741, at *5 (D. Or. July 23, 2015) (explaining that "it is not the job title that is determinative, but the particular function that is being performed" in reasoning that a police officer can invoke prosecutorial immunity even though "he is not a prosecutor" (internal quotation marks and citation omitted)).

Absolute immunity attaches to actions "intimately associated with the judicial phase of the criminal process." *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2004) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). However, "[a]bsolute prosecutorial immunity is not limited to criminal prosecutions, but extends to civil enforcement proceedings." *State v. Superior Court*, 921 P.2d at 700. Conversely, prosecutors have only qualified immunity for acts classified as administrative or investigative. *Buckley*, 509 U.S. at 273, 276; *State v. Superior Court*, 921 P.2d at 700. The party seeking absolute immunity bears the burden of demonstrating that absolute immunity applies to the function in question. *Botello v. Gammick*, 413 F.3d 971, 976 (9th Cir. 2005).

Furthermore, absolute immunity applies to prosecutors acting within the scope of their authority and performing in a "quasi-judicial" capacity. *State v. Superior Court*, 921 P.2d at 700; *see also Olsen v. Idaho State Bd. Of Med.*, 363 F.3d 916, 919 (9th Cir. 2004) (noting that the doctrine extends to cover non-prosecutors who engage in "quasi-prosecutorial acts"). "Caselaw has fleshed out what actions qualify as 'intimately associated with the judicial phase'" and when one acts in a quasi-judicial or quasi-prosecutorial capacity. *Sanchez v. Maricopa County*, No. CV 07-1244-PHX-JAT, 2007 WL 2903027, at *3 (D. Ariz. Oct. 2, 2007). Prosecutors are protected by absolute immunity when acting as an advocate for the state, both in initiating and preparing for a prosecution, and in presenting the state's case. *Buckley*, 509 U.S. at 273; *Gobel v. Maricopa County*, 867 F.2d 1201, 1203 (9th Cir. 1989). Government advocates are also afforded absolute immunity for a decision as to whether or not to prosecute a case, *Botello*, 413 F.3d at 976, and for the failure to investigate accusations against a defendant before filing charges, *Broam*, 320 F.3d at 1029. Finally, the examining court must

consider "the nature of the function performed, not the identity of the actor who performed it," when assessing absolute immunity. *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997) (citation omitted).

### 2. Analysis

#### a. Uniquely Government Role

In this matter, Defendants were not traditional prosecutors. Defendants did not initiate or pursue a criminal prosecution, which is the most common application of the doctrine of absolute prosecutorial immunity. *See, e.g.*, *Imbler*, 424 U.S. at 430–31. Rather, the Court is considering whether state employees are entitled to absolute prosecutorial immunity in bringing a motion for sanctions as a part of civil dependency proceedings. (*See* Doc. 15 at 4). While the statutes raised by Defendants' motion for sanctions only provide criminal remedies, Defendants did not "seek[] criminal or civil contempt sanctions" in the underlying matter. (Doc. 18-1 at 3). Regardless, the Court sees the purpose of these statutes as protecting the interests of juveniles in dependency proceedings; a task which Defendants were uniquely assigned to carry out as DCS employees or counsel for DCS. *See, e.g.*, *Lorenz v. State*, 364 P.3d 475, 477 (Ariz. Ct. App. 2015) (explaining that statutes governing dependency proceedings "make[] clear that the intent is to protect dependent children" (citing Ariz. Rev. Stat. Ann. § 8–451(B) (setting forth that "[t]he primary purpose of [DCS] is to protect children" in the Title establishing DCS and containing the statutes implicated here))).

Here, Plaintiffs argue that Defendants are not entitled to absolute immunity because Defendants "were not taking action that only a legal representative of the government could take." (Doc. 17 at 6). Plaintiffs claim that "[a]nyone aggrieved by the release of confidential information actually protect [sic] by the two statutes can bring a claim or seek sanctions." (*Id.*). The Arizona legislature, however, did not provide a private cause of action under these two statutes, which instead establish criminal misdemeanors. (Doc. 18 at 5); *see generally* Ariz. Rev. Stat. Ann. §§ 8-542, 8-807. Plaintiffs argue that Defendants were not pursuing criminal sanctions in the underlying

civil adoption proceedings, but, regardless of how Defendants styled their motion for sanctions, the only sanctions pursuable under the implicated statutes are criminal. (Doc. 17 at 6); *see also* Ariz. Rev. Stat. Ann. §§ 8-542, 8-507. The fact that Defendants may not have sought the proper remedy under the statutes did not change the nature of Defendants' role and, therefore, does not abrogate absolute immunity.

It stands to reason that, because there is no private cause of action under the relevant statutes, Defendants in this particular case were in the specific position to bring an action due to their unique government duty to protect dependent children as DCS employees and counsel. *See Phoenix Baptist Hospital v. Aiken*, 877 P.2d 1345, 1351 (Ariz. Ct. App. 1994) (reasoning that "no private cause of action should be inferred based on a criminal statute where there is no indication whatsoever that the legislature intended to protect any special group by creating a private cause of action" (internal quotation marks and citation omitted)); *c.f. Stapley v. Pestalozzi*, 733 F.3d 804, 811 (9th Cir. 2013) (holding that county prosecutors were not entitled to absolute immunity in bringing a civil action under a statute explicitly providing a private right of action to any injured person because the prosecutors had "no status as plaintiffs different from private citizens" therein). Accordingly, the Court finds that Defendants were acting in a unique role as government representatives in this matter and must analyze whether Defendants' specific actions took place in a quasi-prosecutorial capacity and were intimately associated with the judicial process.

### b. Quasi-Prosecutorial Capacity

Ultimately, the determination as to whether Defendants have absolute immunity depends on the functions Defendants performed with regard to filing a motion for sanctions against Plaintiffs.[1] *See Kalina*, 522 U.S. at 127 (placing emphasis on function

---

[1] Plaintiffs argue in their Response (Doc. 17) that absolute immunity cannot apply because "the civil nature of adoptions is not, 'intimately associated with the judicial phase of the *criminal* process.'" (Doc. 17 at 4) (emphasis in original). Defendants note in their Reply (Doc. 18) that the distinction between civil and criminal proceedings is not determinative. (Doc. 18 at 3). Absolute immunity can apply equally to a prosecutor acting in a quasi-judicial role in a criminal or civil proceeding. *State v. Superior Court*, 921 P.2d at 700.

over position). Plaintiffs allege that Defendants violated Plaintiffs' rights by filing a motion that "[Defendants] [k]new or should have known was legally and factually meritless." (Compl. ¶ 88). Even in accepting these allegations as true, the allegations do not preclude Defendants' entitlement to absolute immunity—a prosecutor retains absolute immunity even when filing a "baseless" suit. *Challenge, Inc. v. State*, 673 P.2d 944, 948 (Ariz. Ct. App. 1983) (applying absolute prosecutorial immunity to a government attorney instigating a civil suit for violations of Arizona's Consumer Fraud Act, securities law, and anti-racketeering statutes). The Court, therefore, need not make a determination as to the motivation behind or the nature of Defendants' motion—retaliatory or otherwise. Rather, the Court must weigh several factors to determine whether Defendants acted in a quasi-prosecutorial capacity in bringing the disputed motion as advocates of the state.

Absolute immunity can extend to "any hearing before a tribunal which perform[ed] a judicial function." *Burns v. Reed*, 500 U.S. 478, 490 (1991) (alterations in original and citation omitted). It is designed to "serve[] the policy of protecting the judicial process," which is "a check on prosecutorial actions[.]" *Id.* at 492. The Supreme Court outlined several factors ("*Butz* factors") that embody characteristics of the judicial process to determine whether a court should grant absolute immunity:

> (a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal.

*Cleavinger v. Saxner*, 474 U.S. 193, 202 (1985) (citing *Butz v. Economou*, 438 U.S. 478, 512 (1978)).

"The primary purpose of [DCS] is to protect children." Ariz. Rev. Stat. Ann. § 8-451. To achieve this purpose, DCS workers must be allowed to "function independently and effectively, without fear of intimidation or harassment" when discharging their public duties. *Fry v. Melaragno*, 939 F.2d 832, 835 (9th Cir. 1991). This public interest remains

in place regardless of "[w]hether the government [actor] is representing the plaintiff or the defendant, or is conducting a civil trial, criminal prosecution or an agency hearing[.]" *Id.* at 837 (holding that IRS attorneys are entitled to absolute immunity in defending the agency in tax court proceedings). Subjecting government actors to civil liability for bringing an action pursuant to the DCS statutes implicated in this case does nothing to advance the purpose of the statutes and would undermine the "need for the exercise of independent judgment in the conduct of public duties." *Meyers*, 812 F.2d at 1156 ("Although child services workers do not initiate criminal proceedings, their responsibility for bringing dependency proceedings, and their responsibility to exercise independent judgment . . . is not very different from the responsibility of a criminal prosecutor."). Accordingly, the first *Butz* factor weighs in Defendants' favor.

The remaining *Butz* factors call for scrutiny of proceedings which are inherently different from the judicial process afforded to Plaintiffs in this case. *See Butz*, 438 U.S. at 481 (introducing the *Butz* factors to ensure that a Department of Agriculture administrative hearing provided adequate judicial process). Courts typically question the availability of procedural safeguards in administrative hearings before government or quasi-government committees, but not in a traditional court setting. *Compare Mataele v. Nunn*, No. 08CV1618-LAB (RBB), 2009 WL 10676459, at *5 (S.D. Cal. July 29, 2009), *aff'd*, 467 Fed. Appx. 607 (9th Cir. 2012) (reasoning that Superior Court proceedings preserve sufficiently "sizable safeguards in place to reduce unconstitutional conduct without the prospect of private lawsuits"), *with Cleavinger*, 474 U.S. at 194 (scrutinizing the judicial process present in hearings held by a prison's Discipline Committee), *and Olsen*, 363 F.3d at 923–24 (applying the *Butz* factors in determining that members of the Idaho State Board of Medicine were entitled to absolute immunity related to their "quasi-judicial and quasi-prosecutorial functions" in an administrative hearing (citing *Mishler v. Clift*, 191 F.3d 998, 1009 (9th Cir. 1999))). "[T]he safeguards built into the judicial system tend to reduce the need for private damages actions as a means of controlling unconstitutional conduct" by government advocates. *Burns*, 500 U.S. at 492 (citing *Butz*,

438 U.S. at 512). Because the proceedings at issue in this case are not merely quasi-judicial proceedings, but actual judicial proceedings in Superior Court, the remaining *Butz* factors weigh in favor of granting absolute immunity.

Specifically, Plaintiffs and Defendants were subject to the applicable Arizona Rules of Procedure for the Juvenile Court, and the Courts and Civil Proceedings rules as adopted by the Arizona legislature. *See generally* Ariz. R.P. Juv. Ct.; Ariz. Rev. Stat. Ann. tit. 12. Plaintiffs were also represented by independent counsel in these proceedings. (Compl. ¶ 62). A neutral Superior Court judge heard argument on Defendants' motion for sanctions in an adversarial proceeding independent from undue political influence. (Doc. 18-1 at 7). The Superior Court further considered appropriate precedent and delivered an appealable ruling in Plaintiffs' favor following consideration of the motion for sanctions and the parties' respective arguments. (*Id.*). Accordingly, the Court finds that the proceedings at issue here embody the characteristics of judicial process captured by the remaining *Butz* factors, such that absolutely immunity may extend to Defendants' actions taken in connection with the proceedings.

Having considered the relevant question, the Court finds that the functions undertaken by Defendants in this case are within the bounds of quasi-prosecutorial functions protected by absolute immunity. *See, e.g.*, *State v. Superior Court*, 921 P.2d at 702 (holding that Department of Health Services employees were acting as immunized advocates of the state when the employees filed a civil complaint as a function of their investigatory role, notwithstanding a court's subsequent determination that there was no evidence of the abuse supporting the complaint). Defendants fulfilled a uniquely government role on behalf of DCS by performing quasi-prosecutorial functions in proceedings that afforded sufficient judicial process. Accordingly, Defendants' Motion to Dismiss (Doc. 15) is granted on absolutely immunity grounds with regard to all Defendants on all of Plaintiffs' claims.[2]

---

[2] Just as Defendants Hunter and O'Donnell are entitled to absolute immunity as Assistant Attorneys General who filed the motion for sanctions, Defendants Herndon and Scott are likewise entitled to absolute immunity for their role as DCS employees in the "preparation of the motion," which they "directed/requested and/or approved" prior to its

**B. Statute of Limitations**

In the pending Motion to Dismiss (Doc. 15), Defendants alternatively argue that Plaintiff Biebrich's abuse of process claim is barred by the applicable one-year statute of limitations. Ariz. Rev. Stat. Ann. § 12-821.[3] While the Complaint (Doc. 7) urged an abuse of process claim, Plaintiffs' counsel announced at oral argument that Plaintiffs agreed to withdraw that claim. (Hearing Transcript at 17:19–23). Accordingly, the abuse of process claim is so withdrawn/dismissed.

## III. CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that Defendants Colleen O'Donnell-Smith, Jennifer Hunter, Sharon Herndon, and Rebekah Scott's Motion to Dismiss (Doc. 15) on Absolute Immunity Grounds is **GRANTED**. Thus, all Defendants are granted immunity on all pending claims. Accordingly, the Clerk of Court shall enter judgment in favor of Defendants and against Plaintiffs and shall close this case.

Dated this 23rd day of October, 2018.

_____
James A. Teilborg
Senior United States District Judge

---

filing. (Compl. ¶ 57); *see also Meyers*, 812 F.2d at 1157 ("[S]ocial workers are entitled to absolute immunity in performing quasi-prosecutorial functions[.]").

[3] Arizona law affords a plaintiff one year from the date on which a cause of action accrues to bring an abuse of process claim. Ariz. Rev. Stat. Ann. § 12-821. In crediting Plaintiffs' assertion as true that the cause of action could not have accrued "until after the evidentiary hearing" at issue, the Court observes that the last evidentiary hearing relating to this case took place on April 6, 2017. (Doc. 18 at 6 (citing Doc. 18-1 at 3)). Here, Plaintiff's claim accrued more than one year prior to Plaintiff Biebrich filing suit on April 20, 2018. (*See* Doc. 1). This point, however, is rendered moot by Plaintiffs' agreement to withdraw the abuse of process claim and the Court's ruling on absolute immunity, which applies to all pending claims.